1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7  JERMAINE ANTONIO ARMSTRONG,        )    1:10-CV-173 DLB HC
                                      )
8              Petitioner,            )    ORDER REGARDING PETITION FOR
                                      )    WRIT OF HABEAS CORPUS (Doc. No. 1)
9      v.                             )
                                      )    ORDER DIRECTING CLERK TO ENTER
10  WARDEN OF USP ATWATER,            )    JUDGMENT IN FAVOR OF RESPONDENT
                                      )
11             Respondent.            )
                                      )
12  _____

13

14        Jermaine Antonio Armstrong (hereinafter "Petitioner") is a federal prisoner proceeding pro

15  se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Pursuant to 28 U.S.C. §

16  636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.  Local

17  Rule 301(b).

18                              **PROCEDURAL HISTORY**

19        Petitioner was convicted in 2005 in the District of South Carolina for possession with intent

20  to distribute 5 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) and §

21  841(b)(1)(B); Possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §

22  841(a)(1) and § 844 (b)(1)(c); Felon in Possession of a firearm and ammunition in violation of 18

23  U.S.C. § 922 (g)(1) and § 924(e); and Possessing a firearm during and in relation to a drug

24  trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).  See Respondent's Answer at 3.

25  Petitioner's projected release date is June 15, 2035, via good time conduct release.  Id.

26        On August 12, 2008, while incarcerated at FCI Bennettsville, South Carolina, following an

27  investigation, Petitioner received an incident report, which charged him with fighting with another

28  person (aiding and abetting) regarding an incident that occurred on August 5, 2008.  See Petitioner's

Exhibit A.  On April 7, 2009, Petitioner received a rewritten incident report, which charged him with fighting with another person (aiding and abetting) and killing regarding the same incident that occurred on August 5, 2008.  See Respondent's Exhibit 1 at 25.  On April 29, 2009, the Disciplinary Hearing Officer ("DHO") found that Petitioner had committed the prohibited act of killing (aiding and abetting), code 100A.  Id. at 30.

On November 24, 2009, when Petitioner filed the instant petition, he was in the custody of the United States Penitentiary in Atwater, California.  See Doc. No. 1.  Petitioner alleges that his due process rights were violated because: (1) the DHO was not impartial; (2) the DHO's finding was not supported by substantial evidence; (3) he was denied access to videotape and photograph materials; and (4) there was a delay in his hearing.  Respondent filed an answer to the petition on June 7, 2010.  See Doc. No. 29.

**FACTUAL HISTORY**

On August 12, 2008, while Petitioner was housed at FCI Bennettsville, Petitioner received an incident report, which charged Petitioner with "Fighting with another person (Aiding and Abetting)" in violation of Code 201A.  See Petitioner's Exhibit A.  Lieutenant Proffitt states the following:

> On August 12, 2008, while reviewing video footage, it was found that on 8/05/08 at approximately 9:47 a.m., at the common area card table, inmate Trevon Taylor, Reg. No. 56469-083 stood up from the card table, approached inmate Gerald Lafleur, Reg. No. and struck inmate LaFleur with a closed fist in the face.  Inmate Lefleur then stood up from the card table and retreated from inmate Taylor, swinging and missing with a closed fist at inmate Taylor while doing so.  Inmates Lafleur and Taylor then grabbed hold of one another in front of the shower stall nearest the Officer's station.  Inmate Taylor moved down inmate Lafleur's body, towards Lafleur's leg and slightly lifted inmate Lafleur into the air.  Inmate Lafleur then grabbed inmate Taylor in a headlock.  Inmate Taylor then took inmate Lafleur to the ground in front of the shower stall nearest the Laundry room.  As inmate Taylor took inmate Lafleur to the ground, inmate Lafleur never released inmate Taylor's head from the head lock.  Inmate Lafleur hit the ground first with inmate Taylor's body landing on top of inmate Lafleur and inmate Taylor's head hitting the floor.  Inmate Lafleur rolled out from under inmate Taylor and took two more punches before proceeding up the Unit stairwell to his assigned cell.  At this point, inmate Taylor was immobile on the floor.  Inmate Lafleur then discarded his ripped tee shirt while inmates Laquain Roberson, Reg. No. 38840-083, Larondis Crawford, Reg. No. 57011-083 and Jermaine Armstrong, Reg. No. 11210-171, who all witnessed the fight, lifted inmate Taylor to the sitting position.  Once inmates Armstrong, Crawford, and Roberson had inmate Taylor in the sitting position, inmate Armstrong proceeded back to a card table in the common area of the Housing Unit.  Inmates Crawford and Roberson then lift inmate Taylor from the floor and carry inmate Taylor to the lower laundry room of the Housing Unit.

Inmate Roberson stated in a telephone conversation on August 7, 2008, "My cellie was playing cards and he was fighting with another dude. He slammed a dude and knocked himself out. We tried to get him up and take him to the laundry room." The female asked why Roberson was under investigation and Roberson stated, "You don't' supposed to touch nobody." and "I knew it was coming because they can rewind the camera and see the camera." The Unit Officer, S.O.S. U. Jones, was notified by inmate Roberson that inmate Taylor had fallen on some ice in the laundry room and could not get up. S.O.S. Jones radioed for Medical staff and responded to the laundry room to find inmate Taylor in a chair and ice on the floor. Inmate Taylor was conscious and when S.O.S. Jones asked what had happened, inmates Roberson and Dennis Hill Reg. no. 49868-019 told S.O.S. Jones that inmate Taylor had fallen on some ice. S.O.S. Jones observed a red bump on inmate Taylor's forehead, and when inmate Taylor was slouching in the chair and could not sit up, S.O.S. Jones called a Medical Emergency. Inmate Taylor was transported to Medical by medical staff.

Id. Petitioner was provided a copy of this incident report on August 12, 2008. Id.

The August 12, 2008 incident report was suspended pending a review by the Federal Bureau of Investigation ("FBI"). See Petitioner's Exhibit 1. On March 16, 2009, the FBI declined prosecution and the incident report was released for disciplinary processing. Id. The DHO requested that staff rewrite the incident report to include a killing charge to reflect the fact that inmate Taylor had died due to his injuries. See J. Comstock Declaration ("Comstock Decl.") at ¶ 5.

On April 9, 2009, Petitioner received a revised incident report, which charged Petitioner with "Fighting with another person (Aiding and Abetting)" in violation of Code 201A and Killing. See Respondent Exhibit 1 at 25. The report added the following paragraph:

As a result of the fight, inmate Taylor was transported to an outside hospital. Due to the extent of his injuries, inmate Taylor had to be transferred to the Regional Medical Center in Florence, S.C., and was pronounced dead on August 9, 2008. On August 11, 2008, a preliminary autopsy report was received which ruled inmate Taylor's death as a homicide due to C4-5 separation with spinal cord contusions and left cerebellar infarct due to blunt trauma due to the altercation.

See Petitioner's Exhibit B.

On April 17, 2009, Petitioner appeared before a Unit Discipline Committee ("UDC"). See Respondent's Exhibit 1 at 26. Due to the level of the charges, the UDC referred the charges to the DHO for further hearing. Id.

On April 24, 2009, Petitioner appeared before the DHO regarding the April 9, 2009 incident report. See Respondent's Exhibit 1 at 29. The DHO's report indicates that Petitioner acknowledged his rights and was provided a staff representative. Id. Petitioner did not present any witnesses but

1    did provide the DHO with documentation related to the definitions of killing and aiding and abetting.

2    Id. at 30.  Additionally, Petitioner stated as follows:

3            Aiding and abetting would be before hand.  Siting him up and that's it.  I could have been
             making sure he was alright.  I didn't do anything, I can't see.  He was alive and speaking, he
4            wasn't dead.  I don't recall putting my hands on that man.  I never told him I was sitting him
             up.

5    Id. at 29.

6
     The DHO concluded that Petitioner committed the prohibited act of killing (aiding and
7
     abetting) when he placed inmate Taylor in a sitting position after he was observed lying immobile on
8
     the floor following a physical altercation.  Id.  The DHO viewed this action as aiding and abetting in
9
     the death of another inmate.  The DHO considered Petitioner's statement "I could have been making
10
     sure he was alright" and stated:
11
             [i]t was apparent he was not alright as after you had sat him up, you went back to playing
12           cards and inmate Roberson and inmate Crawford carried him to the laundry room.  This
             action is indicative he was unable to walk on his own and if you were checking to see if he
13           was alright, it is believed you would have stayed with him, or reported to a staff member
             regarding his injuries.  More importantly, the actions of you placing inmate Taylor into a
14           sitting position (Aiding and Abetting) after he was found immobile on the floor negatively
             contributed to his neck injury and may have been the final injury that lead to his demise
15           (Killing/Death).  One of his fatal injuries was a C4-5 separation with spinal cord contusion,
             which is a cervical neck injury.  Moving inmate Taylor from the position of laying on the
16           floor to a siting position causes unnecessary movement about his head, which is also parallel
             to the C4-5 separation and contusions of the spinal cord.  Furthermore, you initially indicated
17           you placed inmate Taylor in the siting position, however, later denied making this statement.
             Your conflicting statements challenge your credibility and the contradiction with your
18           statement was confirmed with your staff representative."  The DHO's decision was based on
             the April 7, 2008 incident report, the preliminary autopsy report, Petitioner's statements, and
19           the injury assessment conducted on inmate Taylor.

20   Id. at 30.

21   The DHO struck the charge for fighting (code 201(A)) from the record.  Id. at 30.[1]

22   Petitioner was sanctioned to the loss of 40 days good conduct time, 60 days of disciplinary

23   segregation (suspended pending 180 days clear conduct) along with loss of telephone and

24   commissary privileges for 365 days.  Id.  On June 18, 2009, Petitioner was provided a copy of the

25

26           [1]The DHO report provides: "The DHO finds you did commit the prohibited act of Killing
     (Aiding and Abetting), code 100A.  The charge for Fighting, code 201A is stricken from the record as
27   your actions contributed to the death of another inmate and you were advised during the hearing the
     charge was being reviewed as Killing (Aiding and Abetting), code 100A."  See Respondent's Exhibit
28   1 at 30.

1    DHO's report. Id. at 31.

2            C.       Administrative Appeals

3            Petitioner submitted two Administrative Remedy Appeals challenging the DHO's findings.

4    On June 17, 2009, the Regional Director ("RD") upheld the DHO's finding, and denied Petitioner's

5    appeal. See Petitioner's Exhibit G. Petitioner appealed the RD's decision, which was denied on

6    September 24, 2009. Id.

7                                    **DISCUSSION**

8            I.       Subject Matter Jurisdiction and Venue

9            Habeas corpus relief is appropriate when a person "is in custody in violation of the

10   Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Williams v. Taylor, 529

11   U.S. 362, 375 (2000).   Petitioner asserts that he suffered violations of his rights as guaranteed by the

12   U.S. Constitution.  If a constitutional violation has resulted in the loss of time credits, such violation

13   affects the duration of a sentence, and the violation may be remedied by way of a petition for writ of

14   habeas corpus. Young v. Kenny, 907 F.2d 874, 876-78 (9th Cir. 1990).  Thus, this Court has subject

15   matter jurisdiction.

16           Petitioner was in custody at the United States Penitentiary in Atwater, California, which is

17   located within the jurisdiction of this Court, at the time the petition was filed; therefore, this Court is

18   the proper venue. See 28 U.S.C. § 2241(d).

19           II.      Exhaustion

20           Federal prisoners must exhaust their administrative remedies before bringing a habeas

21   petition pursuant to § 2241. E.g., Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir. 2004); Martinez v.

22   Roberts, 804 F.2d 570, 571 (9th Cir. 1986).  Under the doctrine of exhaustion, "no one is entitled to

23   judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted."

24   Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)).  If a petitioner

25   has not properly exhausted his claims, the district court, in its discretion, may either "excuse the

26   faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative

27   remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  In the

28   instant matter, the record indicates that Petitioner has exhausted his administrative remedies.

III.     Applicable Law

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir.1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-55 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at 455.  The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder.  Id. 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir.1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir.1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Hill, 472 U.S. at 455; Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.1986).

IV.     Petitioner's Claims

Petitioner claims that he was deprived of his liberty without due process because his decisionmaker was not impartial, there was insufficient evidence to support the DHO's findings, he was denied the ability to review videotape and photographic evidence, and there was a delay in his disciplinary hearing.

1     A.  Ground One-DHO's Impartiality

2    Petitioner contends that the DHO was not impartial because he requested that the reporting

3 officer rewrite the initial incident report to include a charge of killing.  For the reasons discussed

4 below, the Court finds that the process afforded to Petitioner during his disciplinary proceedings did

5 satisfy the minimum requirements of the Due Process Clause as outlined in Wolff and Hill.

6    Inmates are entitled to have their disciplinary charges heard by an impartial hearing tribunal.

7 See Wolff, 418 U.S. at 570-71 (hearing tribunal must be "sufficiently impartial to satisfy the Due

8 Process Clause").  The Ninth Circuit has declared that a prison official who has participated in the

9 case as an investigating or reviewing officer, or who has personal knowledge of the incident, is not

10 sufficiently impartial to preside over the hearing.  Clutchette v. Procunier, 497 F.2d 809, 820 (9th

11 Cir.1974), modified, 510 F.2d 613, rev'd on other grounds, Baxter v. Palmigiano, 425 U.S. 308

12 (1976); see also Wolff, 418 U.S. at 592 (Marshall, J., concurring) ("In my view due process is

13 satisfied as long as no member of the disciplinary board has been involved in the investigation or

14 prosecution of the particular case, or has had any other form of personal involvement in the case.").

15 The Code of Federal Regulations provides that "In order to insure impartiality, the DHO may not be

16 the reporting officer, investigating officer, or UDC member, or a witness to the incident, or play any

17 significant part in having the charge(s) referred to the DHO."  28 C.F.R. § 541.16(b) (2010).

18    Here, the record does not support Petitioner's argument that the DHO was not impartial.  The

19 record reflects that the DHO:  (1) was not involved in the investigation or reporting of Petitioner's

20 case; (2) did not have any personal knowledge of the incident; (3) was not a witness to the incident;

21 (4) did not play a significant role in having the charges referred to the DHO; and (5) was not a

22 member of the UDC.  Rather, the record indicates that Lieutenant Proffitt, a member of the Special

23 Investigative Services, drafted the initial incident report, which is dated August 12, 2008.  The

24 August 12, 2008 incident report charged Petitioner with fighting with another person (aiding and

25 abetting).  Lieutenant Proffitt provided that staff became aware of the fighting incident while

26 reviewing video footage.  Lieutenant Proffitt noted that on August 5, 2008, Petitioner observed a

27 fight between two inmates, and after one of the inmates fell to the floor and hit his head and became

28 immobile, Petitioner lifted the injured inmate to a seated position.  As a result of the fight, the

1  injured inmate was transported to a hospital and was pronounced dead on August 9, 2008.  See

2  Petitioner's Exhibit B.  A preliminary autopsy report indicated that the inmate's death was a

3  homicide and the victim died because of a spinal cord and brain injury due to the altercation.  Id.

4       The DHO declared that he requested that a staff member rewrite the incident report to reflect

5  the fact that the injured inmate had died as a result of the altercation.  See Comstock Decl. at ¶¶ 5, 7.

6  Although, Petitioner argues that the DHO improperly referred the charges to the DHO, as noted

7  above, Lieutenant Proffitt is the individual who referred the incident to the DHO.  The DHO merely

8  requested that the incident report be updated to include the fact that the inmate had died.  The DHO

9  did not request that the staff member alter the factual basis of Petitioner's conduct.  Thus, there is no

10 evidence to support Petitioner's argument that the DHO was not impartial.

11      Accordingly, Petitioner is not entitled to habeas relief on this ground.

12      B.    Ground Two-"Some Evidence"

13      Petitioner argues that the DHO's finding that Petitioner was guilty of aiding and abetting in a

14 killing was not based on substantial evidence.  Petitioner contends that the DHO could not prove

15 beyond a reasonable doubt that he was guilty of the crime of killing because he did not have the

16 specific intent to kill the inmate.  Petitioner's arguments have no merit as there is "some evidence" in

17 the record to support the DHO's finding.

18      Due process requires that the decision be supported by "some evidence."  Hill, 472 U.S. at

19 455.  The "some evidence" standard is "minimally stringent," and a decision must be upheld if there

20 is any reliable evidence in the record that could support the conclusion reached by the fact finder.  Id.

21 at 455-456.  Determining whether this standard is satisfied does not require examination of the entire

22 record, independent assessment of the credibility of witnesses, or the weighing of evidence.  Hill,

23 472 U.S. at 455; Toussaint, 801 F.2d at 1105.

24      On April 24, 2009, Petitioner appeared before the DHO.  The DHO outlined in his report the

25 evidence that he relied upon in finding that Petitioner committed the prohibited act of aiding in a

26 killing, which included the incident report, the Lieutenant's statements, the investigation, and the

27 autopsy preliminary report.  See Respondent's Exhibit 1 at 30.  The DHO also considered Petitioner's

28 statement "I could have been making sure [the injured inmate] was alright."  The DHO, however,

was not persuaded by this statement.  Id.  Specifically, the DHO found that:

> it was apparent that he was not alright as after you had sat him up, you went back to playing cards and inmate Roberson and Crawford carried him to the laundry room.  This action is indicative he was unable to walk on his own and if you were checking to see if he was alright, it is believed you would have stayed with him, or reported to a staff member regarding his injuries.

Id.  The DHO further found that Petitioner's act of:

> placing inmate Taylor into a sitting position (Aiding and Abetting) after he was found immobile on the floor negatively contributed to his neck injury and may have been the final injury that led to his demise (Killing/Death).  One of his fatal injuries was a C4-5 separation and contusions of the spinal cord, which is a cervical (neck) injury.  Moving inmate Taylor from a position of lying on the floor to a sitting position causes unnecessary movement about his head, which is also parallel to the C4-5 separation and contusions of the spinal cord.

Id.  Additionally, the DHO noted that Petitioner made conflicting statements concerning his involvement, which challenged his credibility.  Id.  Specifically, Petitioner initially indicated that he placed the injured inmate in a seated position and then later denied making that statement.  Id.  Based on the evidence in the record, the Court finds that there was "some evidence" that Petitioner committed the prohibited offense of aiding in a killing.

Petitioner argues that the DHO did not prove Petitioner's offense beyond a reasonable doubt nor that Petitioner had the specific intent to kill the inmate.  The Court is not persuaded as prison disciplinary proceedings are not criminal prosecutions and a prisoner is not afforded the full panoply of rights which accompany a criminal prosecution.  Wolff, 418 U.S. at 556.  Therefore, the DHO did not have to find that Petitioner committed the disciplinary offense of killing "beyond a reasonable doubt."  Similarly, there was no requirement that the DHO find that Petitioner had the specific intent to kill the inmate.  It appears that Petitioner is suggesting that the Court read into the disciplinary offense of aiding in a killing, a requirement that a prisoner must have the specific intent to commit the underlying offense of a killing.  However, as noted above, Petitioner was charged with a disciplinary offense and not a federal or state crime, which may contain a specific intent requirement. The disciplinary offense of "killing" and "aiding" is not defined in the Code of Federal Regulations or the Bureau of Prison's ("BOP") Program Statements.  Petitioner does not provide any authority and the Court is not aware of any case law that provides that the offense of killing in the prison disciplinary context contains a requirement that the prisoner have the specific intent to kill.

1   Therefore, the Court declines to adopt Petitioner's suggestion.

2          Accordingly, Petitioner is not entitled to habeas relief on this ground.

3          C.      Ground Three-Videotape and Photographic Materials

4          Petitioner asserts that he was prohibited from reviewing videotape and photographic

5   materials.  However, there is no evidence that Petitioner made this request.  The record shows that

6   the DHO informed Petitioner of his due process rights at the hearing and Petitioner declined to

7   present witnesses and only presented a document that related to the definitions of killing and aiding

8   and abetting.  See Comstock Decl. at ¶ 5.  Moreover, the DHO testified that neither Petitioner nor his

9   staff representative asked to review any videotape or photographic materials before or during the

10  DHO hearing.  Id. at 9.  Additionally, the DHO stated that he did not base his decision on any such

11  evidence.  Id.

12         Accordingly, Petitioner is not entitled to habeas relief on this ground.

13         D.      Ground Four-Delay in Petitioner's Disciplinary Hearing

14         Petitioner complains that his hearing before the DHO was delayed and did not comply with

15  the BOP's Program Statement § 5270.07, which provides that a hearing should be placed on the next

16  available docket.  See Petition at 10.   Petitioner's claim fails.

17         Petitioner does not specify the period of delay.  It appears that Petitioner received a revised

18  incident report on April 9, 2009, appeared before the UDC on April 17, 2009, and appeared before

19  the DHO on April 24, 2009.[2]   Even assuming that Petitioner's DHO Hearing was not timely held

20  under the BOP regulations, a violation of a BOP regulation, without more, does not rise to the level

21  of a due process violation.  Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)("[T]here is no

22  federal constitutional liberty interest in having state officers follow state law or prison officials

23  follow prison regulations."); Hovater v. Robinson, 1 F.3d 1063, 1068 n. 4 (10th Cir. 1993) ("[A]

24  failure to adhere to administrative regulations does not equate to a constitutional violation.").  Prison

25  regulations are "primarily designed to guide correctional officials in the administration of a prison.

26

27         [2]Petitioner received an initial incident report on August 12, 2008.  The matter was suspended and
28  was referred to the FBI for prosecution.  On March 23, 2009, the FBI declined prosecution and the
    matter was reinstated for disciplinary disposition.

[They are] not designed to confer rights on inmates." <u>Sandin v. Conner</u>, 515 U.S. 472, 481-82 (1995).  The Constitution only requires that prisoners be afforded those procedures mandated by <u>Wolff</u> at a prison disciplinary hearing; it does not require that prison officials comply with their own more generous procedures or time limitations.  As <u>Wolff</u>'s requirements were met in this case, Petitioner's dissatisfaction with the unspecified delay that occurred with his disciplinary hearing do not implicate due process concerns. The relevant inquiry is not "whether the prison complied with its own regulations," but whether Plaintiff was "provided with process sufficient to meet the <u>Wolff</u> standard." <u>Walker v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir.1994), abrogated on other grounds by <u>Sandin</u>, 515 U.S. 472.

Moreover, Petitioner has failed to establish that any alleged delay in his DHO hearing caused him prejudice and negatively affected his ability to defend against the charges.  The record reveals that Petitioner made statements at his hearing and presented the DHO with definitions of "killing" and "aiding and abetting."  Thus, Petitioner had an opportunity to defend against the charges.

Accordingly, Petitioner's due process rights were not violated and he is not entitled to habeas relief.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.      The Petition for Writ of Habeas Corpus is DENIED; and

2.      The Clerk of the Court is DIRECTED to enter judgment for Respondent.


IT IS SO ORDERED.

Dated:    **June 24, 2011**            **/s/ Dennis L. Beck**
                                        UNITED STATES MAGISTRATE JUDGE